NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2081
_____

CHRIS JUDAY; PAT JUDAY,

Appellants

v.

MERCK & CO INC; MERCK SHARP & DOHME
CORP; ANN REDFIELD
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-16-cv-01547)
Honorable Harvey Bartle, III, District Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
February 6, 2018

BEFORE:  CHAGARES, SCIRICA, and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: April 4, 2018)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

COWEN, Circuit Judge.

Plaintiffs Chris Juday and Pat Juday appeal from the order of the United States District Court for the Eastern District of Pennsylvania granting the motion for summary judgment filed by Defendants Merck & Co., Inc., and Merck, Sharp & Dohme Corp. (collectively "Merck") as well as from the judgment the District Court entered in Merck's favor. We will affirm.

I.

Chris Juday allegedly suffered personal injuries as a result of receiving Zostavax, Merck's anti-shingles vaccine. He received the vaccine on March 2, 2014, and Mr. Juday and his wife, Pat Juday, filed this diversity action on April 5, 2016. Plaintiffs are citizens of Indiana while the two Merck entities are incorporated and have their principal places of business in New Jersey. Plaintiffs asserted a number of claims, including negligence, design defect, failure to warn, breach of express warranty, breach of implied warranty, negligent misrepresentation, unjust enrichment, and loss of consortium.

Merck moved for summary judgment on statute of limitations grounds. The District Court granted this motion and entered judgment in Merck's favor. It applied Pennsylvania's two-year "statute of limitations with its narrower discovery rule" to their claims of negligence, design defect, failure to warn, negligent misrepresentation, and loss of consortium. Juday v. Merck & Co., CIVIL Action NO. 16-1547, 2017 WL 1374527, at *5 (E.D. Pa. Apr. 17, 2017). The District Court considered the unjust enrichment and warranty causes of action under Indiana's two-year statute of limitations (and Indiana's somewhat more liberal discovery rule). According to the District Court, "[t]he

2

undisputed facts here establish that beginning on at least March 13, 2014, Mr. Juday not only had an 'unrebutted suspicion' that he had suffered an injury from the Zostavax vaccine administered to him on March 2, 2014, but also had information that there was a 'reasonable possibility' [the applicable Indiana standard] that there was a causal connection between the vaccine and his symptoms." Id. The District Court also considered and rejected his belated claim of fraudulent concealment (under both Pennsylvania as well as Indiana law).

## II.

Plaintiffs specifically invoke Pennsylvania's discovery rule, observing that "[t]he limitations period starts when there is an 'unrebutted suspicion that a claimant has a particular disease, which is caused by another.'"[1]  (Appellants' Brief at 10 (quoting Debiec v. Cabot Corp., 352 F.3d 117, 132 (3d Cir. 2003) (emphasis omitted)).)  Under this equitable exception to the general rule that the limitations period begins to run at the time of injury, the statute of limitations is tolled until the injured party discovers, or reasonably should discover, that he or she has been injured and that the injury has been caused by another party.  See, e.g., Fine v. Checcio, 870 A.2d 850, 859 (Pa. 2005).  It is

---

[1] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and we possess appellate jurisdiction under 28 U.S.C. § 1291.  We exercise de novo review over a district court's order granting a motion for summary judgment. See, e.g., Seamans v. Temple Univ., 744 F.3d 853, 859 (3d Cir. 2014).  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See, e.g. Fed. R. Civ. P. 56(a).  This Court reviews "a claim that the district court has prematurely granted summary judgment for abuse of discretion." Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002) (quoting Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 510 (3d Cir. 1994)).

undisputed that the application of this exception generally presents a question of fact. See, e.g., Sadtler v. Jackson-Cross Co., 587 A.2d 727, 732 (Pa. Super. Ct. 1991). However, "where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." Cochran v. GAF Corp., 666 A.2d 245, 248 (Pa. 1995) (citing Hayward v. Med. Ctr. of Beaver Cty., 608 A.2d 1040, 1043 (Pa. 1992), abrogated on other grounds by Fine, 870 A.2d at 860 n.4). It is also uncontested that the plaintiff bears the burden of proof to show his or her entitlement to equitable tolling. See, e.g., id. at 249.

Plaintiffs challenge the District Court's conclusion that Mr. Juday clearly possessed an unrebutted suspicion that he had suffered an injury from the Zostavax vaccine no later than March 13, 2014. According to Plaintiffs, they are seeking compensation for injury to Mr. Juday's lungs—and not for his chickenpox infection. They claim that "the record is strikingly clear that Mr. Juday did not suspect Zostavax caused any injury to his lungs until, at earliest, April 9, 2014" (Appellant's Brief at 10), when Dr. Ikerd, an infectious disease specialist, "confirmed the link between Mr. Juday's symptoms and Zostavax" (id. at 7). This action was commenced on April 6, 2016, less than two years from April 9, 2014. In fact, Mr. Juday was not diagnosed with bronchial obliterans (as well as restrictive airway disease and pneumonia) until May 1, 2014. Furthermore, "Mr. Juday [a farmer with a history of allergies, including to corn, bananas, and soybean oil] first presented to [his primary care physician] Dr. Jon Van Scyoc's office with a cough as early as February 24, 2014 – **before** Mr. Juday received Zostavax." (Id. at 11 (citing A91).) In his March 24, 2014 office note, Dr. Van Scyoc

4

indicated that Mr. Juday had been exposed to respiratory illness (which he explained meant that he probably caught an illness from another person).[2] In the alternative, Plaintiffs argue that Mr. Juday was not certain that his illness was caused by chickenpox and clearly was not aware that Zostavax caused his chickenpox. "The District Court emphasized the March 13, 2014 telephone call Mr. Juday made to his employer as undisputed evidence that Mr. Juday made the critical connection between chickenpox and the Zostavax vaccine. However, when questioned by the Defendant about that call, Mr. Juday testified that he drew no connection between Zostavax and chickenpox at that point."[3] (Id. at 14 (citing A94); see also, e.g., A98 (answering question whether he mentioned Zostavax to his employer because he believed shingles vaccine caused his sickness in the negative).)

However, a definitive diagnosis is not required to trigger the running of the statute of limitations. See, e.g., Debiec, 352 F.3d at 132. "[A] plaintiff clearly need not know the precise extent of her injuries before the statute will run." Levenson v. Souser, 557 A.2d 1081, 1090 (Pa. Super. Ct. 1989) (citing Ayers v. Morgan, 154 A.2d 788 (Pa. 1959)). In this case, there was no genuine dispute of material fact as to the existence of

---

[2] Plaintiffs also note that Mr. Juday was prescribed an antibiotic for his cough (which would have no effect on a virus like chickenpox). Ms. Juday ("a registered nurse who works in pulmonology" (Appellant's Brief at 4)) testified at her deposition that they were very concerned about the cough but "had no idea where the cough was coming from" (A103). "Dr. Van Scyoc was just totally stymied, and I was stymied, and Andrea Compton [a nurse practitioner] was stymied." (A106.)

[3] Furthermore, Compton testified that, among other things, the rash she examined on March 12, 2014 did not present in the way in which she would expect if it were a reaction to the vaccine and that "I was thinking I wasn't sure what the rash was from; it could be related to a viral – virus" (A111-A112).

"unrebutted suspicion that [Mr. Juday] has a particular disease, which is caused by another," Debiec, 352 F.3d at 132, more than two years before Plaintiffs filed their complaint. On March 12, 2014, Plaintiffs reported that Mr. Juday: "Had zostavax 8 days ago initially fine but developed diffuse raised rash first on right side of trunk but now spread across back accompanied by low grade fever and cough." (SA80.) On March 24, 2014, they described Mr. Juday's condition as a "[r]ash from shingles vaccine improving but still with persistent cough, Intermittent fever" (SA85) and indicated on April 1, 2014 that "[n]ear same timeframe [i.e., shortly after Mr. Juday received Zostavax] he developed a dry cough and some fever which persists" (SA89). Ms. Juday also testified that, among other things, both she and Compton "knew, as nurses, and people who give vaccines, that, it was a live vaccine, that there was a possibility" that the rash could be chickenpox. (SA113.) Compton stated in her deposition that she thought Zostavax could have caused Mr. Juday's cough "[b]ecause typically some of the adverse reactions to live vaccines can be fever, cough and rash." (SA97.) The nurse practitioner accordingly had Merck notified of these possible reactions to its vaccine.

In addition, Mr. Juday's own March 13, 2014 statement to his employer is (as the District Court aptly put it) especially telling. According to the employer's disability report form, Mr. Juday claimed that he could not work because he was suffering from a "Severe Allergic Reaction to Shingles" (SA125 (emphasis omitted)), which he explained in his deposition meant a reaction to the shingles vaccine. While he did not recall using these exact words, Mr. Juday did remember saying that "I had a shingles vaccination and I was sick." (A97.) "In everyday parlance, he obviously was informing his employer

6

that a causal connection existed between these two closely occurring events, that is receipt of the vaccine and his illness." Juday, 2017 WL 1374527, at *5. We agree that, under the circumstances, "[t]here is no other rational explanation for saying not only that he was sick but also in the same breath that he had received the shingles vaccination."[4] Id.

The District Court also properly disposed of Plaintiffs' belated attempt to invoke the fraudulent concealment exception. A defendant may not invoke the statute of limitations, "if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Fine, 870 A.2d at 860 (citing Deemer v. Weaver, 187 A. 215, 215 (Pa. 1936)). According to Ms. Juday's deposition testimony, Compton told Ms. Juday that "she had talked to Merck and they said they'd never seen the chickenpox from the vaccine." (A101.) This hearsay does not satisfy the present sense impression exception. See, e.g., United States v. Mitchell, 145 F.3d 572, 576 (3d Cir. 1998) ("(1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and

---

[4] In Debiec, we concluded that reasonable minds could disagree about whether three individuals exercised the requisite diligence because medical professionals had indicated to them that they did not have berylliosis or Chronic Beryllium Disease ("CBD"). Debiec, 352 F.3d at 133-40. However, this Court also determined that "Branco should have suspected as early as 1995, and certainly by May 1997, that he suffered from CBD, and that the tests which followed, negative though they were, cannot support tolling in light of the doctor's warnings that the tests were technically unsatisfactory and that Branco should undergo further testing, and in the absence of assurance from his physicians that he did not have a beryllium-related disease." Id. at 138. The present case more closely resembles the circumstances implicated by Branco's claims than the circumstances presented by the other Debiec parties.

(3) the declaration and the event described must be contemporaneous." (citations omitted)). Furthermore, "there is no evidence in the record that Ms. Juday ever told her husband about this conversation with Ms. Compton." Juday, 2017 WL 1374527, at *7. "Ms. Juday was not asked at her deposition if she told her husband about it, and he likewise was not questioned about it at his deposition. . . . There is no evidence that Merck knew of a case where the vaccine had caused chickenpox or that it misled plaintiffs when it reported that it did not think that the vaccine had caused the chickenpox."[5] Id.

Finally, Plaintiffs argue that the District Court abused its discretion and violated their constitutional rights to due process of law and a trial by jury by disposing of this case prior to the end of discovery. While Plaintiffs' counsel evidently referred at oral argument to ongoing discovery on the issue of fraudulent concealment, it is undisputed that they never filed an affidavit or declaration under Rule 56(d) or otherwise indicated in writing that they needed additional discovery. See, e.g., Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer considering or deny the

---

[5] While Plaintiffs cite in their reply brief to the hearsay exception for declarations against interest as well as a patient information statement and the drug label (which indicate respectively that cases of chickenpox have been reported and that the vaccine can cause the individual to develop chickenpox and/or shingles), they did not mention such matters in their opening brief. See, e.g., Garza v. Citigroup Inc., 881 F.3d 277, 284-85 (3d Cir. 2018) (observing that appellant generally waives argument if not raised in opening brief). In any event, it would seem that, given such disclosures, Mr. Juday should have been able to discover the apparent causal connection between his medical problems and the vaccine (and, similarly, such publicly available information would appear to be inconsistent with any claim of "fraudulent concealment").

summary judgment motion, allow time to obtain affidavits or declarations or to take discovery, or issue any other appropriate order). In any event, the scheduling order expressly stated that any statute of limitations motion shall be filed and served before January 5, 2017. A second scheduling order extended this deadline to February 6, 2017. While Merck conducted discovery and appropriately filed its summary judgment motion on the deadline, it appears that "[a]t no time while the case was pending before the district court did Plaintiffs propound any discovery requests on Merck or notice any depositions." (Appellee's Brief at 4.) The District Court subsequently heard oral argument and ordered additional briefing (and "provided the Plaintiffs a short opportunity to supplement the record on the issue of fraudulent concealment" (Appellant's Reply Brief at 14)). Given these circumstances, we conclude that the District Court neither abused its discretion nor violated Plaintiffs' constitutional rights.

III.

For the foregoing reasons, we will affirm the order and judgment of the District Court.